Jack GRINESTAFF et al., Appellants,

v.

Don GRINESTAFF et al., Appellees.

Court of Appeals of Kentucky.

Dec. 12, 1958.

———◆———

Terry L. Hatchett, Glasgow, Paul Carter, Tompkinsville, for appellants.

Brents Dickinson, Jr., Glasgow, Abe P. Carter, Tompkinsville, for appellees.

CLAY, Commissioner.

This suit was brought by plaintiff appellants, owners of a tract of land, to enjoin appellee defendants from appropriating a part of a private cemetery located thereon. The Chancellor denied plaintiffs relief, and adjudged that defendants should have "custody and control" of a section of the cemetery, recently marked off by them, for their exclusive family use. Plaintiffs appeal on the ground that there is no legal basis for giving defendants any future rights in this graveyard.

In 1915 a large tract, of which the cemetery is a part, was owned by T. S. Grinestaff (plaintiffs' predecessor in title). In that year the infant son of his brother Roscoe died. (Defendants are the descendants of Roscoe). T. S. had apparently been planning to start a family graveyard, and this infant was the first body buried there. T. S. fenced off a plot around this grave and it has been used since 1915 as a cemetery. What, if any, arrangements were made between T. S. and Roscoe are not known.

Forty-one persons have since been buried in this plot. Several were members of the T. S. and Roscoe Grinestaff families, although some were not relatives. With the exception of one of the defendants' relatives who was buried in 1935, about which there is some question, all persons were buried in this graveyard only by permission of T. S. and his lineal descendants.

Shortly before this suit was filed defendants placed markers around a southwest section in which members of Roscoe's family had been buried. By this act they undertook to appropriate a specific part of the cemetery for the future use of their branch of the family, there being substantial unused ground for new graves.

Plaintiffs acknowledge that defendants have acquired a right to maintain the graves of the members of their family now buried in this cemetery, including the right to visit, decorate, and care for the existing graves and gravestones. The issue presented is whether or not defendants have an absolute right to continue to bury their dead in this cemetery, and particularly the exclusive right to bury their dead in the section of the cemetery which they marked off shortly before this suit was filed.

By answer the defendants claimed the rights above mentioned on two grounds: (1) adverse possession, and (2) dedication by the original owner. The plea of adverse possession was not established. The Chancellor upheld the contention that a part of this cemetery had been *dedicated* to the Roscoe Grinestaff family.

█ There is no such thing known to the law as the dedication of land to an individual for private use. 16 Am.Jur., Dedication, Section 15 (page 359). The term is defined as "the intentional appropriation of land by the owner to some proper public use." 16 Am.Jur., Dedication, Section 2 (page 348).

"The essence of dedication is that it shall be for the use of the public at large. There may be a dedication for special uses, but it must be for the benefit of the public. Properly speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land, as distinguished from general public uses."

16 Am.Jur., Dedication, Section 5 (page 349). For innumerable additional cases see Words & Phrases, Vol. 11, "Dedication".

This concept of dedication has many times been recognized by this Court. Hedge v. Cavender, 217 Ky. 524, 290 S.W. 342, 343; W. T. Congleton & Co. v. Roberts, 221 Ky. 712, 299 S.W. 579, 581; Consolidated Realty Co. v. Richmond Hotel & Building Co., 253 Ky. 463, 69 S.W.2d 985.

In Potter v. Mullins, 267 Ky. 822, 103 S.W.2d 274, 276, we said:

"But to make a valid dedication an intention to appropriate the right to the general use of the public must exist. If it confer a right of way, the way becomes a common highway and is not a private passway. A private passway cannot be created by dedication. So when the appropriation is for the use of particular persons only, and is made under circumstances excluding the presumption that it was intended for public use, it will not amount to a dedication."

█ Recognizing this principle, it seems settled that the right of burial in a private cemetery cannot be established or acquired by dedication. 14 C.J.S. Cemeteries § 19, p. 78; Morgan v. Collins School House, 160 Miss. 321, 133 So. 675; Wooldridge v. Smith, 243 Mo. 190, 147 S.W. 1019, 40 L.R.A.,N.S., 752; A. F. Hutchinson Land Co. v. Whitehead Bros. Co., 127 Misc. 558, 217 N.Y.S. 413. The latter opinion contains a splendid analysis of the doctrine of dedication, its history, and its limitations.

The case of Phipps v. Frances, 267 Ky. 203, 101 S.W.2d 924, is pertinent. Plaintiff brought suit to enjoin a church from using as a cemetery part of the property she had conveyed to it. One of the defenses was that she had dedicated a certain part of the property as a burial ground. Similar to the case before us, the first body buried in this cemetery was the sister of the plaintiff. Subsequently 16 bodies were buried in this plot with the express or implied consent of the plaintiff, some of them being members of the family and some being strangers. The court, recognizing that the only basis

for the claim of dedication could be the relinquishment of the property to the public, held that plaintiff had not dedicated it for a public use. The court said, at page 927 of 101 S.W.2d:

"A person may consent to a member of his or her family being buried in their yard or garden, but in no light of reasoning could it be said that such act would constitute a dedication of such premises as a public cemetery or burial ground. Not only so, but even if one should consent to the burial of a person of no kin to them on their premises, such use of the premises would be a permissive one and would not constitute a waiver of their right to object to any other body being buried on the premises."

■ A rejection of the claim of dedication in this case is not a matter of semantics. The law simply does not recognize that a private person may acquire an interest in land by virtue of the acquiescence of the owner (which may be sufficient to create a public right). We must bear in mind that we are not concerned with what prerogatives defendants have with respect to existing graves, but are considering their claimed right to the use of other land adjacent thereto. Such a private absolute privilege of burial in this particular cemetery must be founded upon some title or right recognized by law. 14 C.J.S. Cemeteries § 31, p. 90.

In Rose v. Rose, 314 Ky. 761, 237 S.W.2d 80, there appears language to the effect that a graveyard may be dedicated to family use. From the opinion it appears that this term was used in its broad sense as meaning that a certain plot had been set aside as a family graveyard. The effect of the decision was that this burying ground had been excepted from the conveyance of a larger tract surrounding it. The language used in that opinion was unfortunate (the fault lies wholly with the author of this opinion), but we cannot invoke that case in support of defendants' position.

■ We are forced to the conclusion that defendants did not acquire the right claimed on the theory of dedication.

Defendants contend that if part of this graveyard was not dedicated to them, yet they have some special permission, privilege, or license to a continuing use of it for the purpose of burying members of their family. It is unnecessary to examine the insurmountable practical difficulties of determining the scope of such a license, the extent of land to which defendants would be entitled, who may be classified as members of their family, and other similar considerations.

■ However described, defendants are claiming no less than an easement, which is an interest in land. Easements may be created by (1) express written grant, (2) implication, (3) prescription, or (4) estoppel. See 17 Am.Jur., Easements, Section 18 (page 631); Tiffany, Real Property, 3rd Ed., Vol. 3, Section 776 (page 240). Under the facts shown in this record, the right claimed was not created in any of these ways. There was no written grant creating an easement or by virtue of which one could be implied; prescription involves the concept of adverse possession, which was not proven; and there was neither pleading nor proof of estoppel.

■ In the last analysis, defendants' claim is that a long continued permissive use of a private cemetery has somehow created in them an interest in plaintiffs' land (i. e., an easement), which gives them a permanent right to appropriate a part of the cemetery for their own burial purposes. An easement cannot be acquired in this manner.

As said in McCoy v. Hoffman, Ky., 295 S.W.2d 560, 561:

"It is a well settled rule that use of property by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, for there is no

presumption of a grant, and such a license or permissive right is revocable at the pleasure of the owner of the servient estate."

Defendants rely on the case of Morgan v. Collins School House, 160 Miss. 321, 133 So. 675, 676. Suit was brought to cancel a deed to "Collins Graveyard & School House". After the conveyance the property was used by a church and a number of people were buried in the church graveyard. The public use of this cemetery had continued for 27 years as a matter of right. The court, in cancelling the deed and restoring the property to those claiming under the original owner, adjudged that the plaintiffs would be required to do equity and permit families whose members had been buried in the cemetery to continue to use it for this purpose.

The language of the opinion indicates that the court, despairing of any legal basis for its decision, felt it necessary to invoke the broad equitable principle that he who seeks equity must do equity. Under the peculiar facts of that case the decision may have been justified, but it furnishes us with no rational principle which could be applied here. It seems to us that the result could easily have been reached on the ground of adverse possession, but in any event the claims in that case were based upon color of title, which is not the situation we have before us.

Defendants also rely on Carter v. Town of Avoca, 197 Iowa 670, 197 N.W. 897. Therein the plaintiff claimed the right to bury members of his family on a lot in a public cemetery which his family had used for this purpose for 40 years. Since that controversy involved a public cemetery and adverse possession, we cannot see its present applicability.

In the Chancellor's opinion KRS 381.710 is quoted. This statute relates to evidence indicating that land has been set aside for burial purposes. There is no issue before us as to whether or not the property involved has been recognized and used as

a graveyard. Our question is what specific future rights, if any, the defendants have acquired in it. The statute has no bearing on this question.

Since it is apparent from the foregoing discussion that the defendants have acquired no interest in plaintiffs' land which would give them a right to use it in the future for burying members of their family (without the permission of the owners), it is our opinion that the plaintiffs were entitled to the relief sought.

The judgment is reversed for the entry of one consistent with this opinion.